30764. ARISTOCRAT DAIRY PRODUCTS COMPANY INC.
v. GEORGE.

Decided April 21, 1945. Rehearing denied May 24, 1945.

W. E. Armistead, T. J. Long, for plaintiff in error.

O. J. Coogler, E. E. Carter, contra.

Parker, J.  Mrs. Mabry Suttles George sued Aristocrat Dairy Products Company Incorporated for damages for the alleged tortious death of her sixteen-year-old son.  The petition alleged, substantially, that her son had made arrangements with the driver of a tractor truck of the defendant to ride to Atlanta; that her son waited on the east side of the highway and as the truck approached he raised his hand to let the driver, Charlie Character, know of his presence so that he could stop; that the truck did not stop but ran into, upon, and over her son, dragging him for a distance of more than one hundred feet before stopping; that the defendant was negligent in the following particulars:  (1) the driver failed to stop for the boy as he had agreed to do and as he had been instructed; (2) in running into, upon, against, and over him; (3) in failing to stop the truck after striking the boy so as to avoid running over and injuring him; (4) in failing, after striking the boy, to cut the truck to the left in order to keep the tractor and trailer from running over and injuring him; (5) in failing to have the truck under control so as to be able to stop when he saw the danger the boy was in; and, (6) in that it dragged, pushed, rolled, and hammered the body of the boy for a distance of more than one hundred and twenty-four feet carelessly, recklessly, and without due regard for human life when he could have avoided the injuries by the exercise of ordinary care.  The court overruled an oral motion to dismiss the action, and the defendant excepted pendente lite. The case proceeded to trial and resulted in a verdict for the plaintiff.  The defendant excepts to the overruling of its motion for a new trial, and also assigns error on its exceptions pendente lite.

■  The court did not err in overruling the motion to dismiss the action on the ground that the petition did not set forth a cause of action.

■ The only eye witness to the trailer's hitting the petitioner's son was Louis Hood, who testified as follows: "My name is Louis Hood. I live back down in the country from Morrow. I knew Glen George. I knew when he was killed. I was standing looking at him when he got killed. I was standing on Mr. Mundy's store porch and Glen was just across the street from me. I saw the tractor and trailer come up there. I had seen Glen beforehand at the tractor. It was about 150 or 200 yards from him when he waved at it. He was standing just on the shoulder of the road. I could see him and see the tractor as it approached. I seen the tractor got up even with him and the next thing I seen Glen was wound up in the dollies under the trailer. From where I was I could see across the road and under the trailer but I couldn't see under the tractor. This picture you show me, that is the same rig that killed him. This is the store I am talking about; I was standing right here where this man is sitting in that chair, right on the edge of it. Yes the tractor had already passed before I saw him go down. It had already got by and this here is what done it; the edge of the trailer knocked him down under the tractor wheel and let him go under the trailer, and the dollies picked him up That is the same side. The trailer side sticks out about a foot and a half or two feet over the tires and that thing here; that wheel of the tractor comes up on this side of the road. This side of the trailer hit the boy and knocked him down and he come through the wheels, between the wheels, and the dollies picked him up. These new type dollies, they go straight up and down, they don't lay back like the old ones. The corner of the trailer hit the boy here. The body of the trailer is wider than the tractor, and Glen was standing here on the edge of the road and the boy got his tractor by and this trailer set out. It comes out over the edge of the shoulder of the road a little. It was setting out far enough to catch the boy and when it caught the boy it threw him under there and the dollies picked him up. If it had been the old type of dollies like they are on most trucks it would not have killed the boy, but this new type dollies are just straight up and down and there is only six or eight inches from the ground, and this load it had on it made it set down. I have had experience driving these types of tractors and trailers. I been on the road about fourteen months. I am familiar with these things. It is gradually up-grade where

Glen was standing. When it hit the boy it was running between ten and twelve miles an hour. He could have seen the boy for at least half a mile down the road. I am familiar with the operation of these brakes. He could have stopped the tractor and trailer the length of his tractor. He didn't do it. He ran about ninety-five or a hundred feet. I saw him on the ground after he was hit. The right hind wheel of the trailer had stopped on him, right on his breast, and his face was turned to the south, and I run up behind him and looked at him and turned my head and walked on around. Charlie Character was the driver of that tractor and there was another negro with him. I don't know who he was. The cab of the tractor just provides for one, no passengers. There wasn't room for another person in the cab. There were two men in the truck at the time and they just got on up the road there and run over the boy. He did not move a bit for him, didn't move over for him. He slowed down just before he got to the boy like he was going to stop dead still. He got even with him and released his brakes and then when he released the brakes he picked up and started on. He was running on the line; his inside tires were running across the line of the middle of the road until he got started up the grade and then he was bearing back to the right. The boy was standing on the right hand of the road. Before he got to the boy he was running like most of us do to keep from riding on the shoulder of the road, over the middle line, and then he pulled back over to the side of the road and come on up. When the accident actually happened the tractor or truck was on the paved road. Glen was standing on the side of the road to catch the truck. He was right up on the side of the pavement on the shoulder of the road. There was no obstruction there to prevent Glen from seeing the truck. Glen was looking at the truck as it was coming up the road; I imagine he was."

The evidence further showed that on the occasion in question the deceased was only 16 years of age; that he had many times ridden on the truck with the same driver and with the permission of the boy's father, who was an officer in the defendant corporation; that on the date of his death, after obtaining his father's permission to ride upon the truck, the boy arranged with the driver to meet him on the road at the place where the homicide occurred.

This evidence, together with the testimony of the eyewitness Hood, that the driver checked the speed of the truck just before reaching the boy as if he was going to stop, and then released the brakes and increased the speed of the truck, and that the truck ran about 95 or 100 feet after striking the boy, although it could have been stopped within the length of the tractor, made an issue for the jury as to the alleged negligence of the driver of the truck, and as to whether it was the proximate cause of the boy's death. We do not think the case in this respect is dependent on circumstantial evidence, as is argued in the dissenting opinion. The witness Hood was standing on the store porch just across the street from where the accident happened, and he testified that he was looking at the boy and the truck when the accident occurred. The weight and credibility of his testimony was a matter exclusively for the jury to pass on. We are of the opinion that the verdict for the plaintiff was authorized, and that the court did not err in over-ruling the motion for a new trial.

Pursuant to the act of the General Assembly, approved March 8, 1945, requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed. All the judges concur, except*

Felton, J., dissenting. I think the evidence fails to show that the negligence of the driver was the proximate cause of the death of Mrs. George's son. From Louis Hood's testimony and his reference to the photographs in the record, it appears that he was on the opposite side of the road from the truck and trailer when the misfortune occurred. *He did, not state the cause of the injury except by way of conjecture.* He testified: "I could see him and see the tractor as it approached. *I seen the tractor got up even with him and the next thing I seen Glen* [petitioner's son] *was wound up in the dollies under the trailer.*" Ordinarily it would be a question for the jury to choose between a witness's contradictory statements, but in this case it is an inescapable conclusion that the witness did not and could not have seen how the misfortune occurred from where he was standing, and that he didn't intend so to testify. Assuming for the sake of argument that the petitioner's son was standing at a point at right angle to the witness; that is, directly in front of the witness across the road, and

that the space, as indicated from the photographs in the record, between the tractor and trailer was approximately three feet, at the estimated speed of the truck of twelve miles per hour, the witness would have been enabled to glimpse the deceased for one sixth of one second between the time the tractor passed him and the trailer struck the deceased, thus whether the deceased had attempted to board the tractor or was first struck by the tractor was obliterated from the view of the witness. As a matter of fact the boy was not standing at right angle to the witness, and it is, therefore, shown that the witness had not even a sixth of a second to observe what occurred. It was impossible for him to see what part of the tractor or trailer hit the boy or just what caused him to fall or be knocked under the trailer. It is just as reasonable to say that the boy attempted to board the tractor while it was in motion and that he lost his footing. The cause of the injury is based solely on circumstantial evidence and the answer as to the proximate cause is just as consistent with accident or the boy's negligence as it is with negligence of the driver. So much for the striking of the boy. Furthermore, there is no evidence that the driver was negligent in continuing to drive the truck. There is not one iota of evidence that he knew the boy was injured or in danger, or had any reason to suspect it. The only eyewitness testified only that he saw the deceased before the truck reached him and saw him after he was under the trailer. This situation makes the proximate cause of the injury a pure question of circumstantial evidence, and under the well-known principle that where the evidence is circumstantial and is equally consistent with two opposing theories, one of liability and one of non-liability, a verdict for the party having the burden of proof is unauthorized.